IN THE UNITE STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
LODGED _____ RECEIVED

OCT 2 4 2018

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY
DEPUTY

| | |
|---|---|
| DENISE MILLER | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FIRST PREMIER CORPORATION | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| STELLAR RECOVERY, INC | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| DIVERSIFIED CONSULTANTS, INC | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| SOUTHWEST CREDIT SYSTEMS, L.P. | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| CREDIT MANAGEMENT, LP | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| TRIDENT ASSET MANAGEMENT | ) |
| | ) |
|     Defendant, | ) |
| | ) |
| TRANS UNION, LLC | ) |
| | ) |
|     Defendant. | ) |
| | ) |
| EQUIFAX INFO. SRVCS. LLC | ) |
|     Defendant. | ) |
| | ) |
| EXPERIAN INFO. SOLS. INC. | ) |
| | ) |
|     Defendant. | ) |

CASE NO.: 1:18-cv-02538-GLR
**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT AND JURY TRIAL DEMANDED

COMES NOW the Plaintiff, Denise Miller, and for her complaint against the Defendants First Premier Corporation ("First Premier"), Stellar Recovery Inc. ("Stellar"), Diversified Consultants, Inc. ("Diversified"), Southwest Credit Systems, LP ("Southwest"), Credit Management, LP ("Credit Mgt"), Trident Asset Management, L.L.C. ("Trident"), Trans Union, LLC ("Transunion"), Equifax Information Services, LLC ("Equifax") and Experian Information Solutions, Inc. ("Experian").

## PRELIMINARY STATEMENT

1.      This is an action for actual and statutory damages, punitive damages, costs and attorney's fees brought pursuant to Fair Credit Reporting Act, 15 U.S.C. 1681 ("FCRA"), Federal Debt Collection Practices Act, 15 U.S.C 1692 ("FDCPA"), Maryland Consumer Protection Act, Md. Code Ann., Com Law §13-101 *et seq*. ("MCPA") and common law tort of defamation.

## PARTIES TO THE ACTION

2.      Denise Miller is a natural person and resides in Baltimore, Maryland.

3.      First Premier is a community bank that provides financial services to customers, businesses, agricultural producers, and organizations in the United States.

4.      Stellar is a third-party collection agency that specializes in collecting auto loans, medical bills, education loans, property management debts, retail accounts and utility services.

5.      Diversified is a telecom-specific collection company that specializes in the bad debt recovery of wireless, landline, cable, satellite, utilities, and security arenas.

6.      Southwest provides accounts receivable management and consumer service solutions in the areas of cable, property management, telecommunications, highway toll, government, utility, and education industries.

7.      Credit Management is a receivables management company that provides debt recovery and collection, and call center services to cable television, medical, and commercial industries in the United States and Puerto Rico.

8.      Trident is based in Atlanta Georgia and specializes in the collection, management and servicing of non-performing consumer receivables.

9.      Transunion is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

10.     Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

11.     Experian is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).

## FACTUAL ALLEGATIONS

12.     Last year Ms. Miller obtained her credit reports from the consumer reporting agencies ("CRA") and found inaccurate information being reported about her.

13.     On her Equifax and Transunion reports was a First Premier tradeline, which was being reported as opened in 01/14/2011, delinquent in February 2011 or March 2011, and charged off with a balance of $456 in June 2011. The reporting was inaccurate because the account did not belong to Ms. Miller. First Premier knew or should have known the account did not belong to her. First Premier defamed Ms. Miller by reporting this debt to the CRAs as a collection method to shame Ms. Miller into paying the false debt.

14.     On her Equifax, Experian and Transunion reports was an AFNI collection. This collection was reported as paid. Ms. Miller paid the account despite disagreeing that she owed it. She only paid the account because AFNI agreed to remove it. Specifically, AFNI stated her credit report *and* credit score would increase substantially if she paid the debt. Therefore, it was inaccurate to report the account because the amount was never correct and it was not reported as disputed.

15.     Diversified was reporting a collection to all three CRAs. Diversified claimed to be collecting an old SPRINT bill for $1,379. This alleged phone account was started in November

3

2012 and went delinquent in October 2013. Although the debt is older than 3-years old and outside the statute of limitations, Diversified did not inform Ms. Miller that it could not file a lawsuit against her to collect on the debt and offered to "settle" the debt with her. When Ms. Miller inquired about this purported bill, both Diversified and SPRINT were unable to identify the alleged phone number for the account.

16.     SPRINT explicitly told Ms. Miller that it could not verify any information in the account. Diversified had very little information on the origins of the debt and could not verify the most basic information. Diversified was unable to even verify the alleged phone number to the account, let alone that there was a phone number issued by Sprint to me. Although Diversified claimed the account was opened on November 28, 2012, it had absolutely no documentation to show that. Despite the account being much older than 3-years old and outside of the statute of limitations, a Diversified representative claimed the Plaintiff could settle the account for $551.14 without stating that it could not legally enforce the debt and that a payment on the stale debt could renew it and eviscerate Plaintiff's iron clad statute of limitations defense to paying the debt. Nevertheless, they still reported this inaccurate, unverifiable information to the credit reporting agencies as a tactic to course me into paying this illegal debt. The account was inaccurate because Plaintiff did not owe Diversified any money for a SPRINT bill.

17.     There was a Southwest collection on each of her CRA's reports. Supposedly, Southwest was also collecting on an old Comcast bill in the amount of $414. This alleged Comcast bill had been delinquent for more than three years and out of side of the statute of limitations to legally enforce the debt in court. Although the debt was not legally enforceable in court, Southwest did not apprise Ms. Miller that it could not sue to enforce the debt in its communications with and attempts to collect the debt from Ms. Miller. Southwest had ceased attempting to collect on the debt and returned it to Comcast. Now, another debt collector, Credit Management, is attempting to collect on the debt and Credit Management stated the debt was only $357.54. The Southwest

4

account was inaccurate because the amount was inflated and Southwest had no legal authority to collect a comcast bill from Plaintiff.

18.     On her Equifax, Experian and Transunion report was a Stellar collection, which was collecting on an old alleged Dish Network bill for $725. This reporting was patently false for Ms. Miller did not owe Dish Network any money, much less $725.

19.     On all three CRAs' reports were a Trident collection that sought to collect an old Verizon bill in the amount of $190. Ms. Miller inquired about the legitimacy of this purported collection, but Trident did not have any details on how the $190 was calculated and Trident could not verify it legally owned or could collect on the debt. Trident claimed the debt was sold by Verizon and that its authority to collect on the debt was manifested in its reporting of the debt and the dunning letter it sent to Ms. Miller. Although Trident apprised Ms. Miller that the bill went delinquent in January 2013, Trident offered to settle the debt for 50% of the bill amount or $94.90 without disclosing that due to the debt's old age it could not sue on the debt or enforce it in court. The Trident account was inaccurate because Ms. Miller did not owe $190 to Verizon, much less did she owe Trident any money.

20.     On May 14, 2018 Credit Management issued a dunning letter to Ms. Miller regarding the Comcast debt. This was Credit Management's first communication with Ms. Miller and in its letter was included Ms. Miller's right to dispute the debt for 30-days. However, in its same letter was a payment coupon demanding payment from Ms. Miller. This demand for payment was much more prominent than that "Validation Notice" paragraph and contradicted and/or overshadowed the "Validation Notice."

## COUNT ONE: VIOLATIONS OF FDCPA

21.     Plaintiff incorporate paragraphs 1-20 by reference.

22.     Within a year of the filing of this complaint, the Defendant AFNI violated 15 U.S.C. §1692e(8) by communicating information that it knew was false to a third-parties, including the three national credit reporting agencies.

23.     Within a year of filing this complaint, the Defendants Stellar and Southwest violated 15 U.S.C. §§1692e(2),(8),(10), & 1692f by:

a. falsely representing that Plaintiff had a debt with Dish Network, that there was a debt in the amount $725, and that the debt could be legally enforced, in violation 1692e(2);

b. communicating information that it knew was false to the three national credit reporting agencies, in violation of 1692e(8);

c. falsely representing the Plaintiff owed a debt and reporting that false debt to the CRAs as a collection method to collect payment from Plaintiff, in violation of 1692e(10);

d. unfairly or unconscionably attempting to collect a debt that Plaintiff did not owe and defaming the Plaintiff with reporting the false debt to the CRAs as a means to collect the false debt from Plaintiff, in violation of 1692f.

24.     Within a year of the filing of this complaint, the Defendant Diversified violated 15 U.S.C. §§1692e(2),(8),(10), & 1692f by:

a. falsely representing that Plaintiff was responsible for a Sprint mobile account, that Plaintiff owed $1,378 for the Sprint account, and that the debt was a legally enforceable debt that could be "settled," all in violation §1692e(2);

b. communicating information that it knew was false to the three national credit reporting agencies, in violation of §1692e(8); and

c. inferring that the debt could be legally enforced with its offer to "settle" the debt without stating the debt was outside of the statute of limitations and could not be enforced in court and failing to state that a payment on the debt could make the debt legally enforceable by renewing the statute of limitations, all in violation of §§1692e(10) 1692f.

25.    Within a year of the filing of this complaint, the Defendant Trident violated 15 U.S.C. §§1692e(2),(8),(10), & 1692f by:

a. falsely representing that Plaintiff owed $190 for a Verizon bill and that the debt was legally enforceable, in violation of §1692e(2);

b. communicating information that it knew was false to the CRAs, including failing to report the debt as disputed, in violation of §1692e(8);

c. falsely representing that Trident owned the Verizon account and that Trident's ownership of the debt was proved by its reporting of the debt to CRAs and its letter(s) that were sent to the Plaintiff, in violation of §§1692e(10) and §1692f; and

d. inferring that the debt could be legally enforced with its offer to "settle" the debt without stating the debt was outside of the statute of limitations and could not be enforced in court and failing to state that a payment on the debt could make the debt legally enforceable by renewing the statute of limitations, all in violation of §§1692e(10) 1692f.

26.    Within a year of the filing of this complaint, the Defendant Credit Management violated 15 U.S.C. §1692g by contradicting and/or overshadowing Plaintiff's right to dispute the debt with its overly prominent request for payment within the same communication and placing no reconciliation language to explain Plaintiff's obligation to pay now was subject to her right to request verification of the debt.

27.    Defendants foregoing illegal debt collection activities have caused the Plaintiff to incur economic damages and emotional/mental distress damages, including without limitation, by example only and as described herein by Plaintiff: out-of-pocket expenses, fear, embarrassment, humiliation, frustration, anger, headaches, sleeplessness, severe emotional and mental distress.

28.    Defendants' conduct was the proximate cause of Plaintiff's injuries, rendering Defendants liable for actual damages in an amount to be determined by the jury pursuant to 15 U.S.C. §1692k(a)(1), statutory damages pursuant to 15 U.S.C. §1692k(a)(2)(A), and reasonable

attorney's fees pursuant to 15 U.S.C. §1692k(a)(3). Plaintiff seeks actual damages in an amount of $75,000 or more, statutory damages in an amount of no $600 to $6,000 and reserves her right to seek reasonable attorney's fees in the event she retains counsel.

**COUNT TWO: VIOLATIONS OF FCRA, §1681s-2(b)**
(as to Defendant Trident)

29.     Plaintiffs incorporate paragraphs 1-28 by reference.

15 U.S.C. §1681s-2(b)(1)(A)&(B)

30.     Defendant Trident violated 15 U.S.C. §1681s-2(b)(1)(A)&(B) by failing to fully and properly investigate Plaintiff's disputes and failing to review all relevant information provided by the CRAs.

31.     Defendant Trident did not conduct a thorough, detailed and careful inquiry of the claims raised in Plaintiff's dispute. Instead of conducting a reasonable investigation and properly responding to Plaintiff's disputes, Trident performed a quick, sloppy, and superficial response, which consisted of nothing more than merely verifying identification information and/or matching the information on the credit reports with the information that Trident had on its computer system or same information Trident previously reported to the CRAs.

32.     Plaintiff's dispute of the amount and Trident's ownership of the debt should have resulted in Trident doing more than just matching identification information.  A reasonable investigation should have included Trident contacting Verizon to verify the amount was accurate and verifying its own records that it "legally" owned or could collect on the debt.

33.     Compliance with its obligations under the FCRA, required Trident to contact Verizon regarding the debt and consult its legal documents to collect the debt or reported back to the CRAs that it could not "conclusively" verify the information was accurate and complete.

15 U.S.C. §1681s-2(b)(1)(C)-(E)

8

34.     Trident further compounded its violations by failing to even report to the CRAs that the Plaintiff continued to dispute the debt.

35.     On information and belief, the Plaintiff alleges that Trident rarely, if ever, notates that an account is disputed when it responds to a consumer's dispute.

36.     Defendant Trident knew that Plaintiff's dispute letters found issue with Trident's reporting and that Trident did not resolve Plaintiff's dispute.

37.     Plaintiff's disputes were bona fide in that if her claims were correct, then Trident's reporting was inaccurate. Further, Trident knew that it did not know if the amount was accurate and the Plaintiff requested details on how the amount was calculated, and therefore, Trident had an obligation to uncover the information during its investigation, delete the disputed information as inaccurate or unverifiable, or at a minimum, notate that the account was disputed.

## DAMAGES – NEGLIGENCE AND WILLFULLNESS

38.     Trident's procedure to simply data match information that it previously reported, or data match the information that it has on its computer desktop with the information currently be reported to the CRA, instead of conducting a careful inquiry into the substance and merits of a consumers' dispute, is unreasonable and a willful violation of the FCRA.

39.     Trident's intentional decision to report a debt against the Plaintiff while knowing it did not verify the accuracy of the disputed amount, is a willful violation of the FCRA.

40.     Trident's intentional decision to report a debt against the Plaintiff while knowing it did not verify its legal authority to collect on the debt, is a willful violation of the FCRA.

41.     Trident's policy to never notate a debt as disputed despite knowing that a consumer disputes the reporting of the debt is a willful violation of the FCRA.

42.     As a result of Trident's violations of 15 U.S.C. §1681s-2(b)(1)(A)-(E), Plaintiff suffered actual damages, including but not limited to: loss of credit, damage to credit profile and reputation, embarrassment, humiliation and other mental and emotional distress.

43.     The ongoing infractions were either intentional, or Defendant cared so little about the duties owed under the FCRA that its conduct was carried out with reckless disregard, which gives rise to a willful violation, rendering Defendant liable pursuant to 15 U.S.C. §1681n.

44.     The violations by Defendant were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendant was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §1681o.

45.     Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT THREE: VIOLATIONS OF FCRA, §§1681e 1681i
(as to the Defendant CRAs)

46.     Plaintiffs incorporate paragraphs 1-28 by reference.

#### 15 U.S.C. §1681e(b) – Unreasonable Procedures

47.     Defendants Equifax, Experian and Transunion violated 15 U.S.C. §1681e(b) by failing to establish and/or follow reasonable procedures to assure maximum possible accuracy in the preparation of Ms. Miller's credit reports and credit files they published and maintained concerning Plaintiff.

48.     The CRAs knew, or should have known, that AFNI, Stellar, Diversified and Southwest were not reliable sources of information.

49.     Stellar is such an unreliable source of information that it has gone out of business. But prior to going out of business, Stellar was the subject of numerous complaints from consumers and these complaints were published publicly in sources such as the BBB or well-known and reputable internet articles or forums.

50.     The CRAs published Plaintiff's credit reports to third-parties, i.e. current creditors, potential creditors, etc. and these published credit reports contained the inaccurate information furnished by defendants First Premier, AFNI, Stellar, Diversified, Southwest and Trident.

51.     As a result of Defendants' violations of 15 U.S.C. §1681e(b) Ms. Miller suffered actual damages, including but not limited to: loss of credit opportunity, damages to reputation, embarrassment, humiliation and other mental and emotional distress.

52.     The violations by Defendants were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, which entitles Ms. Miller to recovery under 15 U.S.C. §1681o.

53.     Ms. Miller is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

<u>15 U.S.C. §1681i(a) – Unreasonable Investigation</u>

54.     Defendant CRAs violated 15 U.S.C. §1681i(a) by failing to properly respond to Plaintiff's disputes. The Defendants did not conduct an independent investigation of Plaintiff's dispute. Instead, the Defendants accepted Trident's version of the facts and did not consider or look into Plaintiff's dispute of Trident's version.

55.     Defendant CRAs violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Ms. Miller's credit file.

56.     Defendant CRAs violated 15 U.S.C. §1681i(a)(2)(A) by failing to provide Trident with all the relevant information regarding Ms. Miller's disputes.

57.     Defendant CRAs violated 15 U.S.C. §1681i(a)(4) on by failing to review and consider <u>all</u> relevant information submitted by Ms. Miller.

58.     Defendant CRAs violated 15 U.S.C. §1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Ms. Miller's credit file or modify the item of information upon a lawful investigation

59.     As a result of Defendant CRAs' violations of 15 U.S.C. §1681i(a)(1)-(6), Ms. Miller suffered actual damages, including but not limited to: loss of credit opportunity, damages to reputation, embarrassment, humiliation and other mental and emotional distress.

60.     The violations by Defendants were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, Defendants were negligent, which entitles Ms. Miller to recovery under 15 U.S.C. §1681o.

61.     Ms. Miller is entitled to recover actual damages, statutory damages, costs and attorney's fees from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT FOUR: VIOLATIONS OF FCRA, 1681g(a)
(as to Defendant Equifax)

62.     Defendant Equifax violated 15 U.S.C. §1681g(a) by failing to disclose all information in the Plaintiff's credit files after receiving her online request for her credit report.

63.     On or about May 11, 2017, Plaintiff requested her credit report from all three CRAs.

64.     Defendant Experian and Transunion furnished Plaintiff's credit reports.

65.     Defendant Equifax refused to furnish Plaintiff's credit report.

66.     Defendant Experian and Trans Union released Plaintiff's credit report because she provided sufficient identification. Equifax could and should have furnished Plaintiff's credit report just as Experian and Trans Union furnished Plaintiff's credit report. Equifax had no legitimate reason to refrain from providing Plaintiff with her credit report.

67.     Despite being aware that Plaintiff requested her credit report and despite knowing that it was required under the FCRA to provide a report, Equifax made deliberate decision not to provide Plaintiff with her requested credit report.

68.     Plaintiff Miller has suffered anxiety and frustration as result of Equifax's failure to provide Plaintiff with her credit report.

69.     Equifax acted willfully and are thus, liable for punitive damages pursuant to 15 U.S.C. §1681n. In the alternative, Equifax was negligent, entitling the Plaintiff to recover actual damages under 15 U.S.C. §1681o.

70.     Additionally, the Plaintiff is entitled to statutory damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681n and §1681o

## COUNT FOUR: VIOLATIONS OF MCPA
(as to Defendant AFNI)

71.     Plaintiff incorporate paragraphs 1-20 by reference.

72.     Defendant AFNI is a "merchant" within the meaning of the MCPA, Com Law §13-101(g) and is subject to all of the MCPA's provisions prohibiting unfair and deceptive trade practices including those in §§13-303 and 13-401.

73.     AFNI's statement that Plaintiff's credit score would increase substantially if she paid the collection was deceptive, unfair and violated the MCPA.

74.     AFNI's omission that it would not remove the collection from the credit report was deceptive, unfair and violated the MCPA.

75.     AFNI's foregoing statement and omission led Plaintiff to believe that the collection would be removed after she paid it.

76.     Plaintiff disputed the AFNI debt and only paid the collection because she believed it was going to be removed.

77.     Plaintiff would not have paid the collection if AFNI told her that the collection would not be removed from her report.

78.     Plaintiff's credit score did not improve substantially, if it improved at all, after she paid the collection.

79.     AFNI violated §§13-301(1), 13-301(3) and 13-303(4) by engaging in the acts and omissions set forth above, by making the misrepresentations set forth above, and by failing to disclose material facts where the failure to do so deceived or tended to deceive, the Defendant has committed unlawful or deceptive trade practices in violation of the MCPA.

80.     AFNI's conduct had the capacity, tendency or effect of deceiving Plaintiff, who in fact was deceived or misled, causing injury and loss through: actual damages, including emotional and mental distress as described in paragraph 43 and costs and attorney fees.

## COUNT FIVE: DEFAMATION
(as to Defendant First Premier)

81.     Plaintiffs incorporate paragraphs 1-20 by reference.

82.     Defendant First Premier intentionally and maliciously made false statement(s) publicly about Plaintiff's credit history.

83.     Defendant's own records revealed that Plaintiff did not owe the reported debt.

84.     Defendant knew, or should have known, that the dept did not belong to Plaintiff.

85.     Despite knowing that Plaintiff did not owe the debt, Defendant published that Plaintiff owed the debt. Defendant's intent was to defame Plaintiff and shame her into paying the debt. Defendant knew that reporting a derogatory debt to Plaintiff's credit report would force Plaintiff to pay the debt in attempt to salvage her credit.

86.     Defendant acted with knowledge of the falsity of the statements and with the intent of harming the Plaintiff's credit reputation.

87.     Defendant's false statement(s) were published without a privilege.

14

88.     As a result of the false and defamatory statements published by the Defendant, the financial character and reputation of the Plaintiff was harmed, her standing and reputation in the financial and credit community was impaired, and he suffered mental anguish.

89.     As a direct and proximate result of the false and defamatory credit reporting published by Defendant, the Plaintiff's credit score and credit profiles were injured, thereby suffering a loss of prospective credit.

**WHEREFORE**, your Plaintiff demands judgment for actual, statutory and punitive damages against Defendant; for her fees and costs; for prejudgment and post-judgment interest; and any other relief deemed appropriate by this Court.

TRIAL BY JURY IS DEMANDED.

Dated: October 18, 2018

        Respectfully submitted,

        Denise Miller
        319 E. 24th Street
        Baltimore, MD 21218
        Tel: 443-599-2613
        *Pro Se Plaintiff*