IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DENISE MILLER, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | Civil Action No.  ADC-18-2538 |
| | * | |
| TRIDENT ASSET MANAGEMENT, LLC., | * | |
| *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

Defendant Trident Asset Management, LLC moves this Court for summary judgment (the "Motion") (ECF No. 127).  Defendant seeks a ruling from the Court that it did not violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, or the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, when managing and reporting a debt owed to Verizon on Plaintiff Denise Miller's credit reports.  Plaintiff filed an opposition to Defendant's Motion (ECF No. 137) and Defendant replied (ECF No. 142).

After considering the Motion and responses thereto, the Court finds that no hearing is necessary. *See* Loc.R. 105.6 (D.Md. 2018).  In addition, having reviewed the pleadings of record and all competent and admissible evidence submitted by the parties, the Court finds that there are no genuine issues of material fact as to the claims asserted.  Accordingly, the Court will GRANT Defendant's Motion (ECF No. 127).  In the alternative and for the reasons consistent with Section 3 of this Opinion, the Court *sua sponte* DISMISSES the Amended Complaint with prejudice as to Defendant Trident.  The Court will DISMISS Defendant's Motion for Leave to Submit Audio

Recording as Exhibit 9 to Its Motion for Summary Judgment as moot (ECF No. 129). Defendant's Motion to Strike (ECF No. 139) is GRANTED.

<h2 style="text-align:center">FACTUAL BACKGROUND</h2>

Defendant Trident Asset Management, LLC is a collection agency that performs debt collection for third-party creditors. ECF No. 128-2 at 2, ¶ 3. In 2017, Plaintiff obtained her credit reports and discovered a number of alleged inaccuracies. ECF No. 35 at 3, ¶ 12. Among those alleged inaccuracies was a debt reported by Defendant that was originally owed to Verizon in the amount of $190.00.[1] *Id.* at 5, ¶ 19.

As a result of the alleged inaccuracies, Plaintiff filed two credit disputes. On May 9, 2018, Plaintiff sent a letter to TransUnion, disputing six accounts appearing on her credit report, including the Verizon account that Defendant was collecting on. ECF No. 128-4 at 2. Specifically, Plaintiff disputed that she had any relationship with any of the collection agencies identified and she requested that TransUnion verify that the agencies owned a debt that she owed. *Id.* Upon learning of the dispute, Defendant conducted an investigation pursuant to its procedures. ECF No. 128-2 at 2–3, ¶¶ 7–10. Defendant's procedure for investigating and responding to credit report disputes consists of "review[ing] any documents attached to the dispute and . . . determin[ing] whether the documents support the dispute," reviewing documents in the individual account, and comparing this information with the data on the Automated Credit Dispute Verification ("ACDV") form. *Id.* at 2–3, ¶¶ 7–9. Defendant then submits any updates with its ACDV response. *Id.* at 3, ¶ 9. While investigating Plaintiff's credit dispute, Defendant confirmed that the amount and identifying information reported to TransUnion accurately reflected the information and

---

[1] According to a copy of the Verizon bill, the outstanding amount was $189.79. ECF No. 128-7 at 2. However, this amount has been rounded to $190.00, the nearest dollar amount, by the credit reporting agencies and the parties.

outstanding balance on Plaintiff's individual account and on the unpaid Verizon bill. *Id.* ¶ 11; ECF No. 128-7 at 2. Upon completing its investigation, Defendant updated Plaintiff's account to reflect "Completed Investigation of FCRA Dispute – Consumer Disagrees," as denoted by "XC." ECF No. 128-2 at 3, ¶ 12; *see also* ECF No. 128-5 at 2–3; ECF No. 128-6 at 2.

On May 23, 2018, Plaintiff sent a letter to Equifax, disputing several debts appearing on her credit report, including the Verizon account, and alleging that these debts resulted from identity theft. ECF No. 128-3 at 2–3. Along with the letter, Plaintiff included a copy of her credit report which contained handwritten notations. *Id.* at 4–7. Next to the entry reporting the Verizon debt, Plaintiff wrote: "ID Fraud, Not Mine. Delete, Remove + Block This Fraud." *Id.* at 6. Defendant once again investigated the credit dispute and updated Plaintiff's account to reflect "Completed Investigation of FCRA Dispute – Consumer Disagrees," and denoted this change with "XC." ECF No. 128-2 at 3, ¶ 12.

On June 27, 2018, Plaintiff called Defendant to discuss the Verizon account. ECF No. 128-8 at 4–5. Plaintiff was assisted on this call by Thomas Alston, who had been helping Plaintiff manage her credit and creditors prior to the lawsuit. ECF No. 128-1 at 4, 9. During the call, in response to Plaintiff's and Mr. Alston's questions, one of Defendant's employees informed Plaintiff that the Verizon account was opened on September 25, 2012 and service was involuntarily disconnected approximately four months later due to nonpayment. ECF No. 128-8 at 6–7. The employee also informed Plaintiff that the debt could be settled for $94.90, 50% of the outstanding balance, and that Defendant was responsible for collecting on the account.[2] *Id.* at 8, 12–14.

After filing her lawsuit, Plaintiff was deposed on April 16, 2019. ECF No. 128-1 at 2. In

---

[2] Although Defendant's employee did not specify the entity that it was collecting for, Defendant supplied information in discovery demonstrating that it was collecting on behalf of Orion Portfolio Services, LLC, which had purchased the debt from Verizon. ECF No. 137-4 at 5–6.

her deposition, Plaintiff testified, *inter alia*, that her daughter opened the Verizon account with Plaintiff's permission and that it was not a result of identity theft. *Id.* at 6, 10. Plaintiff also acknowledged that there was an outstanding balance due to Verizon because her daughter did not pay the bill, although Plaintiff had no knowledge of the amount due or whether the credit reporting was accurate. *Id.* at 5, 8, 12–13, 14.

## PROCEDURAL BACKGROUND

On July 15, 2018, Plaintiff filed the original Complaint in the Circuit Court for Baltimore City against First Premier Corporation, AFNI, Inc., Stellar Recovery, Inc., Diversified Consultants, Inc., Southwest Credit Systems, L.P., Credit Management, LP, Trident Asset Management, LLC, TransUnion, LLC, Equifax Information Services, LLC, and Experian Information Solutions, Inc. ECF No. 1-2. On August 17, 2018, TransUnion removed the action to this Court. ECF No. 1.[3] On October 30, 2018, Plaintiff filed an Amended Complaint, in which she alleged that Defendant violated the FDCPA and the FCRA. ECF No. 35 at 5–10, ¶¶ 25, 29–45. Defendant answered the Amended Complaint on November 7, 2018. ECF No. 37.

From November 2018 through July 2019, several defendants were dismissed from the action, and there were various discovery disputes, conferences with the Court, and other ancillary matters that arose between Plaintiff and Defendant.[4] On July 31, 2019, Defendant filed its Motion, seeking summary judgment against Plaintiff on her FDCPA and FCRA claims. ECF No. 127.

---

[3] The other defendants subsequently consented to the removal.

[4] On February 5, 2019, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302 of the United States District Court for the District of Maryland and upon consent of all parties, this case was transferred to United States Magistrate Judge A. David Copperthite for all proceedings. ECF No. 69.

Defendant also filed a Motion for Leave to Submit Audio Recording as Exhibit 9 to Its Motion for Summary Judgment pursuant to this Court's Electronic Case Filing Policies and Procedures Manual. ECF No. 129. On August 17, 2019, Plaintiff filed an opposition, ECF No. 137.[5] Defendant filed a reply on September 3, 2019. ECF No. 142. Trident also filed a motion to strike two exhibits (ECF No. 137-1, 137-8).

This matter is now fully briefed, and the Court has reviewed Defendant's Motion, as well as the responses thereto. For the following reasons, Defendant's Motion for Summary Judgment (ECF No. 127) is GRANTED.

## DISCUSSION

### A. Standard of Review

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The Supreme Court has clarified that not every factual dispute will defeat a motion for summary judgment but rather, there must be a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphases in original)). An issue of fact is material if, under the substantive law

---

[5] The deadline for Plaintiff's opposition was August 14, 2019. On that day, Plaintiff filed a Motion for Extension of Time to file her opposition, requesting an extension until August 16, 2019. ECF No. 134. The Court granted Plaintiff's request, ECF No. 135, and Plaintiff filed an opposition on August 16, 2019, ECF No. 136. However, Plaintiff's opposition failed to include any supporting documents. On August 17, 2019, Plaintiff refiled her opposition with exhibits. ECF No. 137. Despite its untimeliness, the Court has considered this filing.

of the case, resolution of the factual dispute could affect the outcome. *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the court has drawn all reasonable inferences in favor of the nonmoving party, "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

The party seeking summary judgment bears the initial burden of either establishing that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In order to meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

In determining whether a genuine issue of material fact exists, the court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013) (citing *Bonds v. Leavitt*, 629 F.3d 369, 380 (4th Cir. 2011)). A genuine issue of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Res. Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 635 (4th Cir. 2005) (quoting *Anderson*, 477 U.S. at 249). Thus, "to grant summary judgment the [c]ourt must determine that no reasonable jury could find for the nonmoving party on the evidence before it." *Moss v. Parks Corp.*, 985 F.2d 736, 738 (4th Cir. 1993) (quoting *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990)).

**B. Defendant's Motion for Summary Judgment**

In its Motion, Defendant seeks summary judgment on all remaining claims, which include FDCPA claims in Count I and FCRA claims in Count II. The Court will address each Count in turn.

1. Summary Judgment Is Appropriate as to the FDCPA Claims.

In Count I, Plaintiff alleges that Defendant violated four specific provisions of the FDCPA: §§ 1692e(2), e(8), e(10), and 1692f. ECF No. 35 at 7, ¶ 25. "The FDCPA protects consumers from abusive and deceptive practices by debt collectors . . . . Section 1692e forbids the use of any false, deceptive, or misleading representation or means in debt collection and provides a non-exhaustive list of prohibited conduct." *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F.Supp.2d 577, 585 (D.Md. 2013) (quoting *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D.Md. 2012)) (internal quotation marks omitted). To state a claim for relief under the FDCPA, Plaintiff must allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Id.* (quoting *Stewart*, 859 F.Supp.2d at 759–60). Defendant does not dispute that Plaintiff has been the object of collection activity or that it is a debt collector. *See* ECF No. 128 at 11–22. Rather, Defendant disputes that it engaged in any actions that violated the four provisions identified by Plaintiff. *Id.* at 18–22.

a. The undisputed facts demonstrate that Defendant did not falsely misrepresent the amount or the legal status of the Verizon debt in violation of § 1692e(2).

Plaintiff first alleges that Defendant violated § 1692e(2) of the FDCPA. This provision forbids a debt collector from "[t]he false representation of — (A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2) (2018). In her Amended

Complaint, Plaintiff alleges that Defendant violated this provision in two ways: (1) by falsely representing the amount of the debt; and (2) by falsely representing the legal status of the debt. ECF No. 35 at 7, ¶ 25(a).

Plaintiff first contends that Defendant violated § 1692e(2) when it "falsely represent[ed] that Plaintiff owed $190 for a Verizon bill." *Id.* In support of its Motion, Defendant has produced the Verizon bill showing that a balance of $189.79 was due in February 2013. ECF No. 128-7 at 2. Defendant also points to Plaintiff's deposition testimony, in which Plaintiff acknowledged that an amount was due and owing to Verizon after her daughter failed to pay the bill and testified that she had no knowledge as to whether the reported amount was accurate or not. ECF No. 128-1 at 8, 12–13. Because Plaintiff has admitted that she has no knowledge of whether the amount was accurate and has otherwise presented no evidence to establish a genuine dispute of material fact as to the amount of the debt, Defendant is entitled to summary judgment.

Plaintiff next contends that Defendant violated § 1692e(2) by "falsely representing . . . that the debt was legally enforceable." ECF No. 35 at 7, ¶ 25(a). In her opposition, Plaintiff speculates that Defendant did not have the legal authority to collect on her debt. ECF No. 137 at 10–12. She asserts that Defendant has failed to produce any evidence of its right to collect on the debt and that it, therefore, misrepresented the legal status of the debt by claiming it had acquired or been assigned the debt. *Id.* at 12. According to Plaintiff, Defendant "needs evidence establishing that it had legal authority to collect on the Verizon debt" and, because Defendant revealed in discovery that it was collecting on behalf of Orion Portfolio Services, LLC, ECF No. 137-4 at 5–6, Defendant must show that Orion obtained the debt from Verizon and then assigned it to Defendant for collection. ECF No. 137 at 9.

As Plaintiff acknowledges, Defendant has submitted an affidavit from its President, Anurag

Sett, stating that Plaintiff's debt was referred to Defendant for collection. ECF No. 128-2 at 2, ¶ 5. Although Plaintiff contends that this evidence is insufficient to prove that Defendant had a legal right to collect on behalf of a third-party creditor or that Defendant owned Plaintiff's account, ECF No. 137 at 11, Plaintiff herself has failed to put forth any evidence disputing that Defendant had a legal right to collect on the debt. As the nonmoving party, Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd. v. Phelan*, 526 F.3d 135, 140 (4th Cir. 2008) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). She "must produce some evidence (more than a 'scintilla') 'upon which a jury could properly proceed to find a verdict'" in her favor, *id.* (quoting *Anderson*, 477 U.S. at 251), and because she has failed to do so, Defendant is entitled to summary judgment on this claim.

For the reasons stated, the Court finds that there is no genuine dispute of material fact as to whether Defendant misrepresented the amount of the debt or the legal status of the debt in violation of § 1692e(2) of the FDCPA. Accordingly, Defendant is entitled to summary judgment on the § 1692e(2) claim.

> b. There is no genuine issue of material fact as to whether Defendant reported the Verizon debt as disputed to the credit reporting agencies as required by § 1692e(8).

In the next claim, Plaintiff alleges that Defendant violated § 1692e(8) of the FDCPA. This provision prohibits a debt collector from "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). In her Amended Complaint, Plaintiff alleges that Defendant failed to report the Verizon debt as disputed to the credit reporting agencies. ECF No. 35 at 7, ¶ 25(b).

Defendant contends that it is entitled to summary judgment because it has provided evidence demonstrating that it reported the debt as disputed to the credit reporting agencies. ECF

No. 128 at 19. Plaintiff, however, has proffered what she believed to be contradictory evidence contesting that Defendant reported the debt as disputed to the credit reporting agencies, as required by the FDCPA. ECF No. 137-8 at 1–2, ¶¶ 6–9. The Court has reviewed this evidence and finds that there is no significant dispute of material fact and the Defendant is entitled to summary judgment.

In support of its Motion, Defendant has produced evidence that it updated Plaintiff's account to reflect "Completed Investigation of FCRA Dispute – Consumer Disagrees" and denoted this change with "XC" after investigating Plaintiff's credit dispute. ECF No. 128 at 15. Specifically, Defendant has produced a screenshot from what appears to be its internal processing system transmitted to the credit agencies as well as "notes" from Plaintiff's account demonstrating that Plaintiff's account status was changed to reflect the dispute and notated "XC." ECF No. 128-5 at 2–3; ECF No. 128-6 at 2. Defendant also states without dispute from Plaintiff that this "XC" designation was transmitted to the reporting agencies on June 25, 2018, the date of its monthly reporting schedule.

"[I]n the face of conflicting evidence, . . . summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes." *Ward v. Branch Banking & Tr. Co.*, No. ELH-13-1968, 2016 WL 2930907, at *6 (D.Md. May 17, 2016). Here, Plaintiff points out that Defendant's evidence merely reflects that Defendant notated the account as disputed in its internal records, but it does not show that the debt was reported as disputed to the credit reporting agencies. ECF No. 137 at 14–15. Based upon the affidavit provided by Defendant, the Court finds that argument unpersuasive. Plaintiff in turn, has produced an affidavit from Shetonjela Barber, a Legal Support Associate at Equifax, stating that Defendant "did not instruct Equifax to mark the account as disputed" in ACDV responses dated June 1, June 8, or June 11, 2018. ECF

No. 137-8 at 1–2, ¶¶ 6–9. Plaintiff has also produced two ACDV responses from Defendant to Equifax, dated June 1, 2018, and June 11, 2018, which fail to include the "XC" notation or otherwise report the debt as disputed. ECF No. 137-7 at 10–12, 22–24.

What Plaintiff misses however is that Defendant in its regular course of business did not issue their report until June 25, 2018, which is the date for the monthly reporting cycle. Defendant in its Reply resolved Plaintiff's contention — "[i]t is undisputed that Trident did convey an 'XC' notation on that date. As such, there is no reporting between the date the disputes were received (June 1) and June 25 that appeared on any of Plaintiff's credit reports without a proper notation." ECF No. 142 at 8. Simply stated, the first monthly reporting cycle wherein Trident's reporting would evidence a dispute was June 25, 2018. On June 25, 2018, the date for the monthly reporting cycle, Plaintiff's disputed status was properly noted. Each document provided by Plaintiff is *prior to* the monthly reporting cycle. There remains no dispute of material fact. Defendant first noted "XC" when it was first due, June 25, 2018.

Entry of summary judgment is, therefore, appropriate at this stage because a reasonable jury could not return a verdict for Plaintiff on this claim. *Anderson*, 477 U.S. at 247–48; *Dulaney*, 673 F.3d at 330. Accordingly, Defendant's Motion as to the § 1692e(8) claim will be granted.

       c.  The undisputed facts demonstrate that Defendant's actions did not violate §§ 1692e(10) or 1692f.

Lastly, Plaintiff contends that Defendant violated §§ 1692e(10) and 1692f. § 1692e(10) prohibits a debt collector from using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." 15 U.S.C. § 1692e(10). Similarly, § 1692f, known as the "Unfair Practices" section of the FDCPA, "prohibits debt collectors from using 'unfair or unconscionable means to collect or attempt to collect any debt.'" *Stewart*, 859 F.Supp.2d at 765. In her Amended Complaint, Plaintiff alleges that

Defendant violated these provisions by: (1) "falsely representing that [Defendant] owned the Verizon account and that [Defendant]'s ownership of the debt was proved by its reporting of the debt"; and (2) "inferring that the debt could be legally enforced with its offer to 'settle' the debt without stating the debt was outside the statute of limitations . . . and failing to state that a payment on the debt could make the debt legally enforceable by renewing the statute of limitations." ECF No. 35 at 7, ¶¶ 25(c)–(d).

Plaintiff's first allegation regarding misrepresentation of ownership of the Verizon debt stems from a statement made by Defendant's employee during the June 27, 2018 call with Plaintiff. During the call, Defendant's employee stated that Defendant was "responsible for [Plaintiff's] account right now" and that Defendant owned the account, ECF No. 128-8 at 12–14, but it was later discovered that Defendant was collecting on behalf of Orion, ECF No. 137-4 at 6.

"Whether a communication is false, misleading, or deceptive in violation of § 1692e is determined from the vantage of the 'least sophisticated consumer,' evaluating how that consumer 'would interpret the allegedly offensive language.'" *Powell v. Palisades Acquisition XVI, LLC,* 782 F.3d 119, 126 (4th Cir. 2014) (quoting *Russell v. Absolute Collection Servs., Inc.,* 763 F.3d 385, 394–95 (4th Cir. 2014)). "A logical corollary of the least sophisticated consumer test is that false, deceptive, and misleading statements must be *material* to be actionable." *Id.* (citing *Donohue v. Quick Collect, Inc.,* 592 F.3d 1027, 1033 (9th Cir. 2010)) (emphasis in original). "The materiality requirement limits liability under the FDCPA to genuinely false or misleading statements that 'may frustrate a consumer's ability to intelligently choose his or her response.'" *Id.* (quoting *Donohue,* 592 F.3d at 1034). "In assessing materiality, '[the Court is] not concerned with mere technical falsehoods that mislead no one.'" *Id.* (quoting *Donohue,* 592 F.3d at 1034). Here, any misrepresentation made that Defendant, rather than Orion or Verizon, owned the debt is

a mere technical falsehood and is not materially misleading because Plaintiff knew that a debt was owed to Verizon and acknowledged that Defendant was attempting to collect that debt. ECF No. 128-8 at 2 (quoting Plaintiff as stating "I'm (inaudible) call [sic] regarding an account that I have with you guys that's reporting on my credit" during the June 27, 2018 call with Defendant).

Plaintiff's second allegation also stems from the June 27, 2018 call when Defendant's employee informed Plaintiff that the debt could be settled for 50% of the outstanding balance but did not state that the debt was time-barred and could not be legally enforced. *Id.* at 8–9. Plaintiff, relying on decisions from the Third, Fifth, Sixth, Seventh, and Eleventh Circuit Courts of Appeals, contends that "[o]ffering to 'settle' a time-barred debt without notifying the Plaintiff that the debt is time-barred is a violation of 1692e and 1692f." ECF No. 137 at 7. Although other federal circuits have acknowledged that "a 'settlement offer' with respect to a time-barred debt may falsely imply that payment could be compelled through litigation," *Buchanan v. Northland Grp., Inc.*, 776 F.3d 393, 399 (6th Cir. 2015), the Fourth Circuit does not appear to have adopted this approach and Plaintiff does not cite to any controlling case law on this point.

Contrary to the decisions in other circuits, this Court has stated that "contact between a debt collector and a debtor about a time-barred bad debt is not necessarily an affirmative representation that the debt collector can sue on the debt." *Wallace v. Capital One Bank*, 168 F.Supp.2d 526, 528 (D.Md. 2001) (citing *Shorty v. Capital One Bank*, 90 F.Supp.2d 1330, 1332 (D.N.M. 2000)). In *Wallace*, this Court held that the FDCPA "prohibit[s] a debt collector from threatening to sue on a debt that it knows to be barred by limitations," but absent any threat, "a debt collector may seek voluntary payment of a time-barred debt." 168 F.Supp.2d at 528 (citing *Shorty*, 90 F.Supp.2d at 1332). Here, it is undisputed that Defendant did not threaten to file a lawsuit over the Verizon debt or imply that it could file a lawsuit over the stale debt. As evidenced

13

in the transcript of the June 27, 2018 call produced by Defendant, Defendant's employee merely informed Plaintiff that she could settle the debt for 50% of the outstanding amount. ECF No. 128-8 at 8–9. Such action, according to *Wallace*, is akin to seeking "voluntary payment" and does not violate the FDCPA.

In addition to the reasons previously stated, summary judgment in favor of Defendant on the § 1692f claims is also appropriate because these claims are premised on the same factual allegations supporting the § 1692e(10) claims. ECF No. 35 at 7, ¶¶ 25(c)–(d). This Court, as well as the Fourth Circuit, has previously dismissed claims brought pursuant to § 1692f where they were based on the same conduct underlying the § 1692e claims. *See, e.g., Lembach v. Bierman*, 528 F.App'x 297, 303–04 (4th Cir. 2013) (dismissing § 1692f claims where "there were no allegations of any unfair or unconscionable conduct distinct from the § 1692e allegations"); *Cooke v. Carrington Mortg. Servs.*, No. TDC-18-0205, 2019 WL 3241128, at *5 (D.Md. July 18, 2019) (dismissing § 1692f claims because they were based on the same conduct underlying the § 1692e claims). Here, Plaintiff's § 1692f claims are duplicative of the § 1692e claims and they fail to allege a violation of any enumerated provision in § 1692f, rendering summary judgment appropriate.

For the reasons stated, the Court finds that the undisputed facts show that Defendant did not violate §§ 1692e(10) or 1692f. Accordingly, Defendant is entitled to summary judgment on these claims.

2. Summary Judgment Is Appropriate On The FCRA Claims.

In Count II, Plaintiff alleges that Defendant violated § 1681s-2(b) of the FCRA. "FCRA was enacted 'to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.'" *Akalwadi v. Risk Mgmt. Alternatives, Inc.*, 336 F.Supp.2d 492, 507 (D.Md. 2004) (quoting 15 U.S.C. § 1681b) (alterations in original). It provides a private right of action for consumers to enforce the investigation and reporting duties imposed on furnishers of information. *Id.* at 509. § 1681s-2(b) imposes certain duties on a furnisher of information upon notice of a dispute from a consumer:

> After receiving notice pursuant to section 1681i(a)(2) of this title of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the person shall--
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies in which the person furnished the information and that compile and maintain files on consumers on a nationwide basis[.]

15 U.S.C. § 1681s-2(b)(1)(A)–(D) (2018).

> a. The undisputed facts demonstrate that Defendant conducted a reasonable investigation consistent with its duties pursuant to §§ 1681s-2(b)(1)(A) and (B).

In her Amended Complaint, Plaintiff first alleges that Defendant violated §§ 1681s-2(b)(1)(A) and (B) by "failing to fully and properly investigate Plaintiff's disputes and failing to review all information provided" by the credit reporting agencies. ECF No. 35 at 8, ¶¶ 30–33. Specifically, Plaintiff contends that Defendant "performed a quick, sloppy, and superficial response, which consisted of nothing more than merely verifying identification information and/or matching the information on the credit reports with the information that [Defendant] had on its computer system." *Id.* ¶ 31.

"Nothing in the language of the FCRA indicates the level of investigation required under § 1681s-2(b)(1)," however, the Fourth Circuit has held that "§ 1681s-2(b)(1) requires furnishers, after receiving notice of a consumer dispute from a credit reporting agency, to conduct a reasonable investigation of their records to determine whether the disputed information can be verified." *Akalwadi*, 336 F.Supp.2d at 510 (quoting *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004)). "Th[e] determination whether a furnisher's investigation was 'reasonable' is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account." *Daugherty v. Ocwen Loan Servicing, LLC*, 701 F.App'x 246, 253 (4th Cir. 2017).

Here, Defendant has not only produced evidence that it conducted a reasonable investigation into both credit disputes, but also that its reporting of the Verizon debt was accurate. Defendant has proffered the affidavit of its President, Anurag Sett, which sets forth the detailed policies and procedures Defendant utilizes upon receiving a credit dispute from a consumer and explains that these procedures were followed when investigating Plaintiff's disputes. ECF No. 128-2 at 2–3, ¶¶ 7–10. Additionally, the affidavit explains that Defendant conducted further investigation beyond the information contained in the ACDVs and reviewed the Verizon bill to confirm that the debt reported matched the outstanding balance in Defendant's system and on the bill. *Id.* at 3, ¶ 11. Defendant has also produced the Verizon bill, which reflects that Plaintiff had an outstanding balance for the precise amount reported on her credit report. ECF No. 128-7 at 2.

Notably, in her opposition, Plaintiff does not contest that Defendant conducted a reasonable investigation into the accuracy of the debt. ECF No. 137 at 19. Rather, Plaintiff attempts to generate a dispute of fact by alleging that Defendant did not conduct any investigation into its legal

authority to collect on the debt. *Id.* However, Plaintiff once again fails to present any evidence to support this contention or to dispute the affidavit of Defendant's President, which establishes that Defendant had a right to collect the debt, ECF No. 128-2 at 2, ¶ 5. As previously stated, Plaintiff "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Othentec Ltd.*, 526 F.3d at 140 (quoting *Beale*, 769 F.2d at 214) (internal quotation marks omitted). Accordingly, Defendant is entitled to summary judgment on this claim.

> b. There is no dispute of material fact as to whether Defendant reported the Verizon debt as disputed to the credit reporting agencies as required by §§ 1681s-2(b)(1)(C)–(E).

In addition to her allegations relating to §§ 1681s-2(b)(1)(A) and (B), Plaintiff also alleges that Defendant violated §§ 1681s-2(b)(1)(C)–(E) by failing to report the debt as disputed to the credit reporting agencies. ECF No. 35 at 9, ¶¶ 34–37. As discussed fully *supra*, the parties have proffered uncontradicted evidence on this issue, including evidence from Defendant showing that it noted Plaintiff's account with the "XC" code on June 25, 2018, the day of the monthly reporting cycle. Defendant also states that the screen shot is what was transmitted on that date. Plaintiff does not contest that the "XC" designation was transmitted on that date. Instead, Plaintiff argues that it was not transmitted on three dates prior, which were before the date of the monthly reporting cycle. Defendant does not dispute those facts, but instead provided evidence that those dates pre-dated the day of their monthly cycle report. Such evidence fails to create a dispute of material fact affecting the outcome of this claim and entitles the Defendant to summary judgment. *See Anderson*, 477 U.S. at 248.

3. Plaintiff's Fraud Upon the Court

It is worth noting that the basis of Plaintiff's claim was "fraudulent activity" committed by Defendant. As Defendant has pointed out in the Motion and Reply, Plaintiff originally claimed

she was a victim of fraud when it was actually Plaintiff who initiated this litigation with her own admitted fraud. There was no identity theft. Plaintiff allowed her daughter to use her name for credit and her daughter defaulted. Plaintiff admitted in deposition that she gave her daughter permission to use her name for credit and that her daughter defaulted. Plaintiff's story of how her identity was stolen when she lost her wallet was itself a fraud. While none of these events or facts were necessary in the decision to grant summary judgment, the irony of Plaintiff's claims is not lost upon this Court. Plaintiff does not have and has never had a valid claim.

In her Response to the motion for summary judgment, Plaintiff has now, quite oddly, and with counsel, continued to justify her fraudulent conduct. Plaintiff has filed an Affidavit (ECF No. 137-1) which attempts to minimize her deposition testimony, which contradicted her initial claim. Plaintiff also filed an affidavit from Shetonjela Barber of Equifax which, at best, cherry-picks dates and events in an attempt to thwart the inevitable result of summary judgment (ECF No. 137-8).

As stated above, those dates and events were not relevant to Trident's reporting of the disputed claim. Defendant has filed a motion to strike both these exhibits, and, for the reasons clearly set forth in Defendant's motion (ECF No. 139), the Court agrees. The Court views these exhibits as a last-ditch effort to resuscitate her claim, fraught with fraud from the beginning. Plaintiff's affidavit is, at best, self-serving, and the Barber affidavit was procured beyond the discovery period. Neither affidavit serve to preclude summary judgment. For the reasons set forth in this Opinion, the Court grants the motion to strike both affidavits. Assuming *arguendo*,

however, that the motion to strike was denied, the Court has considered those proffered affidavits in granting the motion for summary judgment.

In response to the motion to strike, Plaintiff argues "[t]here is no claim with respect to the May 23, 2018 'identity theft dispute.'" ECF No. 145 at 1. Plaintiff attempts to persuade the Court that although she made a fraudulent claim which initiated the litigation (which she attempts to factually dispute), any misrepresentation is not to a "material fact." As the Court indicated above, summary judgment in this case does not rest upon the fraudulent conduct of Plaintiff. Courts, however, have a duty to protect the integrity of the litigation process. "It is the 'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993)). In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court provided a discussion regarding the inherent powers of the Court:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed within a Court, because they are necessary to the exercise of all others." *United States v. Hudson*, 7 Cranch 32, 34 (1812); *see also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980) (citing *Hudson*, 7 Cranch at 34). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." *Anderson v. Dunn*, 6 Wheat. 204, 227 (1821); *see also Ex parte Robinson*, 19 Wall. 505, 510 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R. Co.*, 370 U.S. 626, 630–631 (1962).
>
> Prior cases have outlined the scope of the inherent power of the federal courts. For example, the Court has held that a federal court has the power to control admission to its bar and to discipline attorneys who appear before it. *See Ex parte Burr*, 9 Wheat. 529, 531 (1824). While this power "ought to be exercised with great caution," it is nevertheless "incidental to all Courts." *Ibid.*
>
> In addition, it is firmly established that "[t]he power to punish for contempts is inherent in all courts." *Robinson*, 19 Wall at 510. This power reaches both conduct before the court and that beyond the court's confines, for "[t]he underlying concern

that gave rise to the contempt power was not . . . merely the disruption of court proceedings. Rather, it was disobedience to the orders of the Judiciary, regardless of whether such disobedience interfered with the conduct of trial." *Young v. United States ex rel. Vuitton et Fils S.A.,* 481 U.S. 787, 798 (1987) (citations omitted).

Of particular relevance here, the inherent power also allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.,* 322 U.S. 238 (1944); *Universal Oil Products Co. v. Root Refining Co.,* 328 U.S. 575, 580 (1946). This "historic power of equity to set aside fraudulently begotten judgments," *Hazel-Atlas,* 322 U.S. at 245, is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Id.* at 246. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. *Universal Oil,* 328 U.S. at 580.

There are other facets to a federal court's inherent power. The court may bar from the courtroom a criminal defendant who disrupts a trial. *Illinois v. Allen,* 397 U.S. 337 (1970). It may dismiss an action on grounds of *forum non conveniens, Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 507–508 (1947)[,] and it may act *sua sponte* to dismiss a suit for failure to prosecute, *Link,* 370 U.S. at 630–631.

Because of their very potency, inherent powers must be exercised with restraint and discretion. *See Roadway Express,* 447 U.S. at 764. A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. As we recognized in *Roadway Express,* outright dismissal of a lawsuit, which we had upheld in *Link,* is a particularly severe sanction, yet is within the court's discretion. 447 U.S. at 765. Consequently, the "less severe sanction" of an assessment of attorney's fees is undoubtedly within a court's inherent power as well. *Ibid. See also Hutto v. Finney,* 437 U.S. 678, 689, n. 14 (1978).

*Id.* at 43–45.

In the present case, this Court has granted summary judgment to Trident on all counts based upon the reasons set forth in this Opinion. Assuming *arguendo* that summary judgment would not have been appropriate, this Court has the inherent power to dismiss Plaintiff's Amended Complaint as to Defendant Trident based upon her fraudulent conduct. Her initial basis for challenging the reporting of the debt was fraudulent. While it may be argued that her statutory claims are separate and distinct from her fraudulent identity theft, "but for" her claim of

identity theft and her dispute of the debt, there would have been no dispute for Trident to report. Her fraud is inextricably intertwined with her cause of action. Lurking somewhat in the background is her claim that her "attorney" helped her prepare the letter to Equifax. *See* ECF No. 142 at 5 n.3, 7. In her affidavit, ECF 137-1, Plaintiff claims that her landlord, Thomas Alston helped her prepare the letter. She does not identify him as her attorney. Now, despite her prior deposition testimony, she attempts to convince the Court that the signature on the letter and the identity theft report she previously admitted to are forgeries. ECF No. 137-1 at 2, ¶ 16.

It is this Court's opinion that even if summary judgment was not appropriate, dismissal of Plaintiff's Complaint with prejudice is clearly warranted. *Roadway Express*, 447 U.S. at 765. It is beyond comprehension that Plaintiff once again contradicts her prior testimony in the face of inevitable summary judgment. Dismissal here is necessary to the integrity of the courts, for "tampering with the administration of justice in [this] manner . . . involves far more than an injury to a single litigant. It is a wrong against the institutions set up to protect and safeguard the public." *Hazel-Atlas*, 322 U.S. at 246.

**CONCLUSION**

For the reasons set forth in this Memorandum Opinion, the Court finds that there are no genuine issues of material fact as to the FDCPA and FCRA claims. Therefore, Defendant's Motion (ECF No. 127) is GRANTED. In the alternative and for the reasons consistent with Section 3 of this Opinion, the Court *sua sponte* DISMISSES the Amended Complaint with prejudice as to Defendant Trident. Additionally, Defendant's Motion for Leave to Submit Audio Recording as

Exhibit 9 to Its Motion for Summary Judgment (ECF No. 129) is DISMISSED as moot. Defendant's Motion to Strike (ECF No. 139) is GRANTED. A separate Order will follow.

Date: 18 September 2019

A. David Copperthite
United States Magistrate Judge